# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

SHERYL L. CONGER,         )
                                 )
                Plaintiff,      )
                                 )
                v.                )      No.  2:12CV87 NAB
                                 )
CAROLYN W. COLVIN, Acting   )
Commissioner of Social Security,   )
                                 )
              Defendant.    )

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the
Commissioner's final decision denying Sheryl L. Conger's application for
disability insurance benefits under Title II of the Social Security Act, 42 U.S.C.
§§ 401, *et seq.*  All matters are pending before the undersigned United States
Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).
Because the final decision is not supported by substantial evidence on the record as
a whole, the decision of the Commissioner is reversed.

### I.  Procedural History

On September 10, 2009, plaintiff Sheryl L. Conger filed her application for
disability insurance benefits (DIB) alleging that she became disabled on June 1,
2009, because of cervical cancer and Grave's disease.  (Tr. 158-64, 178.)  On

initial consideration and on reconsideration, the Social Security Administration denied plaintiff's claim for benefits. (Tr. 49-56.) Upon plaintiff's request, a hearing was held before an administrative law judge (ALJ) on October 18, 2011, at which plaintiff and a vocational expert testified. (Tr. 22-44.) On January 26, 2012, the ALJ issued a decision denying plaintiff's claim for benefits, finding plaintiff able to perform her past relevant work as a collector. (Tr. 7-16.) On October 18, 2012, upon consideration of additional evidence, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 1-5.) The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

In this action for judicial review, plaintiff contends that the Commissioner's final decision is not supported by substantial evidence on the record as a whole. Specifically, plaintiff argues that the ALJ erred by failing to find plaintiff's seizure disorder and depression to be severe impairments and by failing to consider evidence of all of plaintiff's impairments. Plaintiff also argues that the ALJ improperly found plaintiff's subjective complaints not to be credible and erred in his determination of plaintiff's residual functional capacity (RFC). Finally, plaintiff argues that the ALJ failed to fully develop the record. Plaintiff requests this Court to remand the matter to the Commissioner for further development and

to consider all evidence of record. For the reasons that follow, the matter will be remanded.[1]

## II. Relevant Testimonial Evidence Before the ALJ

At the hearing on October 18, 2011, plaintiff testified in response to questions posed by the ALJ and counsel.[2]

At the time of the hearing, plaintiff was forty-four years of age. Plaintiff stands five-feet, seven inches tall and weighs approximately 250 pounds. Plaintiff has an associate's degree in accounting. Plaintiff lives in a nursing home. (Tr. 30-32.)

Plaintiff's Work History Report shows that, on dates unknown, plaintiff worked as a bill collector and customer service representative for communications companies. From March 2003 to July 2008, plaintiff worked for a printing company. From August 2008 to May 2009, plaintiff worked as a temporary employee through Addecco Staffing. (Tr. 204-08.) Plaintiff testified that she left this last job upon being diagnosed with cervical cancer and moving to St. Louis for

---

[1] The undersigned has reviewed the entirety of the administrative record in determining whether the Commissioner's adverse decision is supported by substantial evidence. The recitation of specific evidence in this Memorandum and Order, however, is limited to only that relating to the issues raised by plaintiff on this appeal.

[2] Prior to the hearing, counsel informed the ALJ that he had not reviewed the file or any of the exhibits. (Tr. 25-27.) The ALJ gave counsel an additional thirty days to submit additional medical evidence, but a review of the record shows that none was submitted to the ALJ before he entered his decision. This counsel subsequently withdrew his representation, and plaintiff obtained new counsel to file her request for Appeals Council review. (Tr. 61-62, 260.)

medical treatment and to find care for her mother who has Alzheimer's. (Tr. 30.)

Plaintiff testified that she underwent radiation treatment and chemotherapy for cervical cancer, which was currently in remission. Plaintiff testified that she was currently unable to work because she cannot stand, sit, or walk for very long without pain. Plaintiff testified that her pain is caused by radiation damage to her spine and by diabetic neuropathy. Plaintiff testified that the radiation treatment also damaged her bladder for which surgery was being considered. Plaintiff testified that her stomach was damaged as well for which she takes medication. Plaintiff testified that she currently has a colostomy. (Tr. 30-34.)

Plaintiff testified that she also has Grave's disease for which she takes medication, but that the medication is unable to keep her thyroid condition stable. Plaintiff testified that she also has diabetes and a seizure disorder for which she takes medication. (Tr. 30-33, 35-37.)

Plaintiff testified that she has been diagnosed with bipolar disorder and schizophrenia for which she takes medication. Plaintiff testified that she also suffers from post-traumatic stress disorder (PTSD) caused by the cancer and the effects of related treatment. (Tr. 33-34.)

Plaintiff testified that she currently lives in a nursing home. Plaintiff testified that her doctors told her that she is unable to live by herself and cannot be released from the home until arrangements are made for her to live with a

responsible person.  Plaintiff testified that she participates in physical therapy at the home when her "body allows it."  (Tr. 34, 37.)

### III.  Medical Evidence Before the ALJ

On September 26, 2008, plaintiff visited Dr. Lorie A. Lashbrook at Westfield Family Physicians (Westfield) for the purpose of establishing care.  Dr. Lashbrook noted plaintiff's medical history to include diagnoses of hypothyroidism and major depressive disorder for which plaintiff took medication, including Fluoxetine (Prozac).  (Tr. 278-80.)  Plaintiff returned to Westfield on December 8, 2008, and reported to Dr. Matthew D. Wehr that she was extremely stressed with taking care of her mother who had severe Alzheimer's and depression.  Dr. Wehr noted plaintiff to continue to take medication for hypothyroidism and major depressive disorder.  (Tr. 274.)  On January 2, 2009, Dr. Wehr noted plaintiff to continue with her Fluoxetine.  (Tr. 272.)

On January 31, 2009, plaintiff was admitted to the emergency room at Brooks Memorial Hospital after having experienced a tonic-clonic, grand mal seizure.  Plaintiff reported having previously been on seizure medication but that she stopped taking the medication more than one year prior.  A CT scan of the head yielded negative results.  Plaintiff was restarted on Depakote and was instructed to follow up with her physician.  (Tr. 281-82, 318-21.)

On June 8, 2009, it was determined that plaintiff had cervical cancer, for

which she underwent surgery on July 16, 2009.  (Tr. 268, 387-88.)

Plaintiff reported to SLU Care on July 28, 2009, that she had right pelvic pain.  It was noted that plaintiff was taking Percocet as well as medication for her thyroid condition.  Chemotherapy and radiation treatment were scheduled.  (Tr. 371-73.)

On August 4, 2009, plaintiff reported to SLU Care that she continued to have severe pelvic pain and that the pain disrupts her sleep.  Plaintiff reported having taken Flexeril and Percocet for the pain.  Physical examination showed tenderness about the right lower quadrant of the abdomen and edema of the extremities bilaterally.  Plaintiff was provided additional prescriptions for Flexeril and Percocet.  (Tr. 368-70.)

Plaintiff visited Dr. James Z. Chen at St. Mary's Health Center (St. Mary's) on August 17, 2009, who noted plaintiff's medical history to include obesity, depression, and treatment for Grave's disease and hypothyroidism.  Plans were made to begin chemotherapy and radiation treatment.  (Tr. 387-89.)  In September, upon starting such treatment, plaintiff experienced severe leg and muscle cramps, syncope, and insomnia, with such conditions requiring hospitalization on September 21 and October 1, 2009.  (Tr. 365, 407.)

On October 12, 2009, while at SLU preparing for chemotherapy treatment, plaintiff experienced seizure activity with facial twitching, non-responsiveness,

and uncontrollable shaking of the extremities. Ativan was administered, and plaintiff was transported to the emergency room. (Tr. 408.)

On October 21, 2009, Dr. Chen noted plaintiff's recent seizure for which she was taken to the emergency room but otherwise noted that plaintiff was tolerating her cancer treatment well. (Tr. 390.) On December 11, 2009, Dr. Chen noted plaintiff to continue to do well with her cancer treatment. (Tr. 395.)

Plaintiff visited Dr. Francisco Xynos on January 5, 2010, for post-chemo-radiation therapy follow up. It was noted that plaintiff obtained excellent results with treatment. Physical examination was normal. Plaintiff was continued with internal radiation therapy. (Tr. 403-06, 414-17, 421-24.)

On January 28, 2010, plaintiff reported to Dr. Xynos's office that she had severe back pain and pain in her legs. Plaintiff also reported that she had a lot of swelling in her legs and that she had fallen. Plaintiff was instructed to go the emergency room. (Tr. 403.) Upon admission to the emergency room at St. Mary's that same date, plaintiff reported her pain to be at a level four on a scale of one to ten. Plaintiff reported that resting helped the pain. Physical examination showed bony tenderness along the lumbar area of the back, with edema noted. Range of motion was normal. Plaintiff's medications were noted to include Tylenol, Prozac, Novolog, Landus, Synthroid, Cytomel, Percocet, Pepcid, and Zantac. X-rays of the lumbar spine were unremarkable. Plaintiff was given Vicodin and Motrin.

Plaintiff was discharged that same date with instructions to follow up with her physician. Plaintiff was diagnosed with edema and was prescribed Synthroid and Lasix upon discharge. (Tr. 426-49.)

Plaintiff visited Dr. Reza Rofougaran on February 2, 2010, for follow up of her diabetes and thyroid conditions. Plaintiff complained of significant swelling and leg cramps. Dr. Rofougaran noted plaintiff's lab results to show severe hypothyroidism despite medication therapy. Plaintiff was instructed to increase her dosage of Cytomel. (Tr. 468-70.)

Plaintiff was admitted to the emergency room at St. John's Mercy Hospital on February 17, 2010, with complaints of seizure activity with headaches and loss of consciousness. It was noted that plaintiff had a history of seizures but was not taking medication. Plaintiff was restarted on seizure medication and was discharged that same date. (Tr. 454-62.)

Plaintiff returned to Dr. Rofougaran on February 26, 2010, for follow up of her diabetes and thyroid conditions. Plaintiff complained of burning in the feet, fatigue, heat intolerance, mild edema, and back and leg pain. Dr. Rofougaran noted plaintiff's current medications to be Synthroid, Cytomel, Lantus, Novolog, Prozac, and seizure medication. Plaintiff reported that she did not feel better with the previous increase in thyroid medication. Plaintiff denied any headaches. Physical examination showed no edema of the extremities. Plaintiff was diagnosed

with uncontrolled type II diabetes, acquired hypothyroidism, and essential hypertension. Plaintiff was instructed to continue with her current medications, and laboratory testing was ordered. (Tr. 465-67.)

Plaintiff was admitted to the emergency room at Emory Johns Creek Hospital on July 28, 2010, with complaints of rectal bleeding and severe pain, including cramping and abdominal pain. Plaintiff reported her pain to be at a level seven. Plaintiff also complained of weakness. It was noted that plaintiff had previously been diagnosed with severe radiation proctitis[3] and had developed significant bleeding, which required cauterization and other treatment.[4] Plaintiff was admitted to the hospital with diagnoses of rectal bleed and acute lower abdominal pain. A CT scan of the abdomen showed mild mural thickening of the rectum and minimal perivesical stranding. Upon consultation, a diverting colostomy was considered, but plaintiff was advised that such procedure should be a last resort. Plaintiff was discharged on July 31, 2010, with a diagnosis of acute proctitis secondary to radiation therapy. (Tr. 494-512.)

On September 1, 2010, plaintiff was admitted to the emergency room at St. Mary's with complaints of severe suprapubic and rectal pain. Plaintiff reported her

---

[3] Inflammation of the mucous membrane of the rectum. *Stedman's Medical Dictionary* 1263 (25th ed. 1990).

[4] The administrative record does not contain any record of this previous diagnosis or treatment.

pain to be at a level ten and that Percocet did not relieve the pain.  Plaintiff also reported having bleeding and stool coming from the vagina and that she had pain with urination and defecation.  Plaintiff also reported having ongoing nausea and frequent diarrhea.  Plaintiff was noted to be distressed.  Plaintiff was admitted for oncology consult.  Upon admission, plaintiff was diagnosed with vaginal bleeding and fecal incontinence via vagina, history of radiation proctitis, type II diabetes mellitus, history of hypothyroidism and Grave's disease, depression, seizure disorder, and gastroesophageal reflux disease.  Review of diagnostic imaging showed erosive reflux induced esophagitis, moderately severe radiation colitis in the rectum, arteriovenous malformation in the rectum, and ulcers due to radiation therapy.[5]  On September 10, plaintiff underwent a permanent diverting end sigmoid colostomy.  During her hospitalization and subsequent to her surgery, plaintiff underwent a psychiatric consult for observed altered mental status.  It was noted that plaintiff was persistently lethargic.  Tearfulness and hallucinations were noted.  Plaintiff's seizure history was noted.  It was opined that plaintiff's rapid mental status changes were most likely a sign of underlying delirium, but no source of delirium was found.  Medication management was implemented, and plaintiff's mental status improved.  Plaintiff was discharged from the hospital on

---

[5]  The administrative record does not contain any record of these diagnostic tests or their results.

September 17, 2010, in stable condition.  Upon discharge, plaintiff was prescribed Percocet, Motrin, Depakote, Geodon, Colace, and Synthroid.  Plaintiff was instructed to continue with her other medications, including Cymbalta.  Plaintiff was instructed to engage in lighter activity for two weeks and to lift no more than fifteen pounds.  (Tr. 641-707.)

Plaintiff went to the emergency room at St. Mary's on September 21, 2010, complaining of severe abdominal cramping and vaginal bleeding.  Plaintiff reported that Percocet and over the counter medications did not help the pain.  Plaintiff also reported having memory loss and occasional hallucinations.  It was noted that plaintiff had a rectovaginal fistula and had fecal matter mixed with urine.  Plaintiff reported that she was unaware that her recent colostomy was not a permanent solution to her problem and that blood and stool may continue to come from her vagina.  Physical examination showed tenderness to palpation about the abdomen near the epigastrium and colostomy site.  Plaintiff was discharged that same date and was instructed to follow up in one week.  (Tr. 618-41.)

Plaintiff was admitted to the emergency room at St. Joseph Health Center on October 7, 2010, with complaints of back pain after having fallen on some steps.  It was noted that plaintiff's colostomy was leaking.  Plaintiff's current medications were noted to include Percocet, Ambien, Depakote, Synthroid, Cymbalta, Novolog, Lantus, Geodon, and Phenergan.  An x-ray of the lumbar spine yielded

negative results.  Plaintiff was diagnosed with back pain and was discharged that same date.  Percocet was prescribed upon discharge.  (Tr. 520-36.)

Plaintiff was admitted to the emergency room at St. Mary's on October 17, 2010, with complaints of seizure activity and associated chest pain, head pain, and abdominal pain.  Plaintiff reported that she could not afford seizure medications. Physical examination showed general tenderness about the abdomen and chest. Range of motion was normal.  Musculoskeletal examination showed no tenderness or edema.   The colostomy site was noted to be clean, dry, and intact.  CT scans of the head and chest yielded negative results.  Plaintiff was begun on Ativan for seizures and was admitted to the hospital.  Plaintiff was continued on her other medications for depression, hypothyroidism, and diabetes as well as prophylaxis for deep vein thrombosis.  During her admittance, plaintiff underwent a neurological consult during which she reported that she was not taking any of her medications, including Cymbalta for depression, because she could not afford them and had no insurance.  It was noted that plaintiff was severely debilitated because of chronic pain.  It was also noted that plaintiff had severe depression.  Mental status examination showed plaintiff to be drowsy and to have poor concentration. Plaintiff's language expression and comprehension were noted to be fair. Plaintiff's memory was likewise noted to be fair.  Plaintiff's insight was questionable.  Motor/sensory examination was normal.  An MRI of the brain was

normal. Plaintiff was diagnosed with seizure disorder with breakthrough seizures, history of pseudoseizures, encephalopathy, and untreated depression. Noncompliance with medications due to financial constraints was noted. Plaintiff was instructed to resume Depakote and Cymbalta and to consult with a social worker for medication assistance. Plaintiff was also instructed to undergo a psychiatric consult. On October 21, plaintiff was discharged from the medical unit at St. Mary's and was transferred to the psychiatric unit. Upon medical discharge, plaintiff was diagnosed with seizures, depression, abdominal pain, hypothyroidism, and stage 2b cervical cancer. Plaintiff was also instructed to go to a skilled nursing facility because of her need for skilled care on a continuous basis. Plaintiff was transferred that same date to the psychiatric unit of the hospital. (Tr. 537-72.)

On October 21, 2010, plaintiff was admitted to the psychiatric unit at St. Mary's with a diagnosed condition of adjustment disorder with depressive symptoms. Plaintiff reported having difficulty dealing with the stress of having a permanent colostomy. Plaintiff reported that she could not go anywhere, could not do anything, and at times felt hopeless, helpless, worthless, and useless. Plaintiff denied any suicidal or homicidal ideation. It was noted that plaintiff had never seen a psychiatrist but was treated by her primary care physician for symptoms of depression. Mental status examination showed plaintiff's mood to be down and her affect anxious. Insight and judgment were noted to be diminished. Dr. Vadim

Baram assigned a Global Assessment of Functioning (GAF) score of 25.[6] During her admission, plaintiff participated in individual, group, and milleu psychotherapy as well as medication management. Plaintiff was placed on suicide precaution. Plaintiff was discharged on October 26, 2010, with an okay mood and a calm and pleasant affect. Plaintiff's insight and judgment were fair. Upon discharge, plaintiff was assigned a GAF score of 52[7] and was noted to be in fair condition but with a questionable prognosis. (Tr. 573-81.)

Plaintiff was admitted to the emergency room at St. Mary's on November 19, 2010, with complaints of rectal bleeding, weakness, and moderate abdominal cramping. A CT scan of the abdomen and pelvis showed no suspicious mass or abscess. Plaintiff was treated with antibiotics for pyelonephritis. (Tr. 723-30.)

On December 6, 2010, George Walker, a medical consultant with disability determinations, completed a Physical RFC Assessment wherein he opined that plaintiff could occasionally lift and carry twenty pounds and frequently lift and carry ten pounds; could stand and/or walk for a total of about six hours in an eight-

---

[6] A GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health/illness." *Diagnostic and Statistical Manual of Mental Disorders*, Text Revision 34 (4th ed. 2000). A GAF score of 21-30 indicates behavior considerably influenced by delusions or hallucinations, or a serious impairment in communication or judgment (*e.g.*, sometimes incoherent, acts grossly inappropriately, suicidal preoccupation), or an inability to function in almost all areas (*e.g.*, stays in bed all day; no job, home, or friends).

[7] A GAF score of 51 to 60 indicates moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers).

hour workday; could sit for a total of about six hours in an eight-hour workday; and was unlimited in her ability to push and/or pull. Mr. Walker further opined that plaintiff had no postural, manipulative, visual, or communicative limitations. Mr. Walker also opined that plaintiff should avoid concentrated exposure to extreme cold, extreme heat, fumes, gases, odors, dusts, poor ventilation, and hazards, but otherwise had no environmental limitations. (Tr. 749-55.)

In a Psychiatric Review Technique Form completed on December 15, 2010, Douglas Robbins PhD, a psychological consultant with disability determinations, opined that plaintiff's mental impairment was not severe. Specifically, Dr. Robbins opined that plaintiff's adjustment disorder with depressed mood resulted in only mild limitations of plaintiff's activities of daily living; in maintaining social functioning; and in maintaining concentration, persistence, or pace. Dr. Robbins further opined that plaintiff experienced no repeated and extended episodes of decompensation. (Tr. 758-68.)

Plaintiff was admitted to the emergency room at St. Joseph Health Center on January 14, 2011, with complaints of having a headache for two days. Physical examination was unremarkable. Plaintiff was given Toradol, Benadryl, and Zofran and was discharged that same date. No discharge medications were provided. (Tr. 769-86.) Plaintiff was admitted to the emergency room at St. Mary's on January

15 with complaints of continued headaches.  Plaintiff left without being seen by a medical provider.  (Tr. 787-88.)

Plaintiff returned to St. Joseph Health Center on January 20, 2011, with continued complaints of migraine headaches.  Plaintiff also reported feeling depressed.  Plaintiff's family reported a recent onset of strange behavior, with plaintiff being observed grasping imaginary objects out of the air.  It was questioned whether plaintiff was taking her medications properly.  It was noted that medication did not resolve plaintiff's previous headache pain.  Physical examination was unremarkable.  Plaintiff was diagnosed with urinary tract infection, headache, depressive disorder, and diabetes.  Plaintiff was administered an injection of Reglan and Toradol, and plaintiff was discharged that same date. (Tr. 791-810.)

Plaintiff was admitted to the emergency room at St. Mary's on February 28, 2011, with complaints of abdominal pain.  Plaintiff expressed concern that her colostomy was coming out or that intestinal matter was protruding through the bag. Tenderness was noted about the abdomen; otherwise, physical examination was normal.  Examination of the colostomy site showed no signs of discharge, erythema, or tenderness.  No mass was appreciated through the colostomy bag, and inspection of the bag showed it to be functioning properly.  Plaintiff was noted to have recurrent urinary tract infections.  Plaintiff's depression was noted to be

stable.  Plaintiff was discharged with instruction to follow up with Dr. Xynos.  (Tr. 829-40.)

## IV.  Evidence Submitted to and Considered by Appeals Council[8]

Plaintiff was admitted to Levering Regional Healthcare Center (Levering) on June 30, 2011, upon being released from a seven-day admission at Hannibal Regional Hospital.  Plaintiff's admitting diagnosis was depressive disorder, not elsewhere classified.  Plaintiff was discharged on October 20, 2011, with a note that plaintiff's return was not anticipated.  (Tr. 262.)

## V.  The ALJ's Decision

The ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2013.  The ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of June 1, 2009.  The ALJ found plaintiff's history of cervical cancer and diabetes mellitus to be severe impairments.  The ALJ specifically found plaintiff's seizure disorder and adjustment disorder not to be severe impairments.  The ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in

---

[8]  In making its determination to deny review of the ALJ's decision, the Appeals Council considered additional evidence which was not before the ALJ.  The Court must consider this additional evidence in determining whether the ALJ's decision was supported by substantial evidence.  *Frankl v. Shalala*, 47 F.3d 935, 939 (8th Cir. 1995); *Richmond v. Shalala*, 23 F.3d 1441, 1444 (8th Cir. 1994).

20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ found that plaintiff had the RFC to perform light work except that she must avoid concentrated exposure to extreme heat, cold, fumes, dust, odors, and gases and must work in an environment free of hazards.  The ALJ determined that plaintiff could perform her past relevant work as a collector.  The ALJ thus found plaintiff not to be under a disability from June 1, 2009, through the date of the decision.  (Tr. 10-16.)

## VI.  Discussion

To be eligible for DIB under the Social Security Act, plaintiff must prove that she is disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a

five-step evaluation process.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482

U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the

claimant is engaged in substantial gainful activity.  If the claimant is working,

disability benefits are denied.  Next, the Commissioner decides whether the

claimant has a "severe" impairment or combination of impairments, meaning that

which significantly limits her ability to do basic work activities.  If the claimant's

impairment(s) is not severe, then she is not disabled.  The Commissioner then

determines whether claimant's impairment(s) meets or equals one of the

impairments listed in 20 C.F.R., Subpart P, Appendix 1.  If so, the claimant is

conclusively disabled.  At the fourth step, the Commissioner establishes whether

the claimant can perform her past relevant work.  If the claimant is determined able

to perform such past work, she is not disabled.  Finally, the Commissioner

evaluates various factors to determine whether the claimant is capable of

performing any other work in the economy.  If not, the claimant is declared

disabled and becomes entitled to disability benefits.

The decision of the Commissioner must be affirmed if it is supported by

substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir.

2002).  Substantial evidence is less than a preponderance but enough that a

reasonable person would find it adequate to support the conclusion.  *Johnson v.*

*Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.    The credibility findings made by the ALJ.

2.    The plaintiff's vocational factors.

3.    The medical evidence from treating and consulting physicians.

4.    The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.    Any corroboration by third parties of the plaintiff's impairments.

6.    The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.*, 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting *Cruse v. Bowen*, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The Court must also consider any evidence which fairly detracts from the

Commissioner's decision.  *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).  However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.  *Pearsall*, 274 F.3d at 1217 (*citing Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).  "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."  *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); *see also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

For the following reasons, the Commissioner's decision is not supported by substantial evidence on the record as a whole, and the decision must be reversed and the matter remanded to the Commissioner for further proceedings.

A.    <u>Severe Impairments</u>

At Step 2 of the sequential analysis, the ALJ specifically found plaintiff's impairments of seizure disorder and adjustment disorder not to be severe.  Because this determination was based on an incomplete review of the record, it cannot be said that the decision is supported by substantial evidence on the record as whole.

In finding plaintiff's seizure disorder not to be severe, the ALJ stated:

There is little medical evidence of a significant seizure disorder.  A

hospital record dated October 22, 2010 shows she presented with seizure activity. It was found the claimant was not taking her seizure medication Depakote. The claimant was restarted on seizure medication and no further report of seizure activity is noted in the record. This indicates the claimant's seizure disorder is effectively controlled.

(Tr. 12.) (Internal citation to record omitted.) This limited recitation fails to acknowledge evidence of seizure activity occurring in January and October 2009, as well as in February 2010. In addition, to the extent the ALJ determines that medication effectively controls the disorder, he fails to acknowledge plaintiff's reported inability to afford such medication. *See Benson v. Heckler*, 780 F.2d 16, 18 (8th Cir. 1985) (although evidence showed medication provided relief, other evidence showed that claimant could not afford the medication) (*citing Tome v. Schweiker*, 724 F.2d 711, 714 (8th Cir. 1984) (an ALJ must consider lack of finances in determining whether an impairment is remedial)). Economic justification for limited or lack of treatment can be relevant to a disability determination. *Murphy v. Sullivan*, 953 F.2d 383, 386 (8th Cir. 1992).

In support of his determination that plaintiff's mental impairment was not severe, the ALJ stated that hospital records from October 21, 2010, note that plaintiff had no previous psychiatric history. The ALJ also found that plaintiff had never been psychiatrically hospitalized. (Tr. 13.) Ironically, the October 21, 2010, record referenced by the ALJ is plaintiff's admission record to the psychiatric unit

at St. Mary's. The ALJ's factual finding that plaintiff had never been psychiatrically hospitalized is directly refuted by this cited record. The ALJ's additional factual finding that the October 21 record noted that plaintiff had "no previous psychiatric history" (Tr. 13) is likewise erroneous. While the record cited by the ALJ states that plaintiff had never been treated by a psychiatrist, it also states: "She apparently was treated by her primary care physician for the symptoms of depression." (*See* Tr. 574.) Indeed, a review of the entirety of the medical record shows plaintiff to have been diagnosed with major depressive disorder since, at least, September 2008 and to have been prescribed psychotropic medications since that time, including Prozac and Cymbalta. As such, although not treated by a psychiatrist, the record shows plaintiff to indeed have a psychiatric history and to have been continuously treated for a psychiatric impairment. Such discrepancies between the ALJ's factual findings and the medical evidence undermine the ALJ's ultimate conclusion that the effects of plaintiff's mental condition render the impairment not severe. *Cf. Baumgarten v. Chater,* 75 F.3d 366, 368-69 (8th Cir. 1996).

Given the ALJ's inaccurate and incomplete recitation of plaintiff's medical history at Step 2 of the sequential analysis, in cannot be said that the ALJ's determination as to plaintiff's severe impairments was based on substantial evidence on the record as a whole. The matter must therefore be remanded for

proper consideration of the entirety of the medical record in this cause.

B.    Credibility Determination

Before determining a claimant's RFC, the ALJ must first evaluate the

claimant's credibility.  *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez*

*v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005).  In so doing, the ALJ must consider

all evidence relating to the complaints, including the claimant's prior work record

and third party observations as to the claimant's daily activities; the duration,

frequency and intensity of the symptoms; any precipitating and aggravating

factors; the dosage, effectiveness and side effects of medication; and any

functional restrictions.  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)

(subsequent history omitted).  When rejecting a claimant's subjective complaints,

the ALJ must make an express credibility determination detailing his reasons for

discrediting the testimony.  *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir.

2012); *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991).  "It is not enough that

inconsistencies may be said to exist, the ALJ must set forth the inconsistencies in

the evidence presented and discuss the factors set forth in *Polaski* when making

credibility determinations."  *Cline*, 939 F.2d at 565; *see also Renstrom,* 680 F.3d at

1066; *Beckley v. Apfel*, 152 F.3d 1056, 1059-60 (8th Cir. 1998).  "[A]n ALJ may

not discount a claimant's subjective complaints solely because the objective

medical evidence does not fully support them."  *Renstrom*, 680 F.3d at 1066

(internal quotation marks and citation omitted) (alteration in *Renstrom*).

Here, the ALJ stated only that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. (Tr. 15.) The ALJ's credibility determination is entirely devoid of any mention or discussion of the *Polaski* factors. Instead, the ALJ appears to rely solely on what he perceives to be a lack of objective medical evidence supporting plaintiff's complaints. Accordingly, this matter must be remanded for an appropriate analysis of plaintiff's credibility in the manner required by and for the reasons discussed in *Polaski*. *See Butler v. Secretary of Health & Human Servs.*, 850 F.2d 425, 428-29 (8th Cir. 1988). This is especially necessary here given the ALJ's failure to consider all the evidence of record in determining the severity of plaintiff's impairments. Where an ALJ fails to consider the full record, a basic flaw exists in his credibility findings. *See Johnson v. Secretary of Health & Human Servs.*, 872 F.2d 810, 814 (8th Cir. 1989).

C.     RFC Determination

When determining a claimant's RFC, an ALJ must consider all relevant evidence, including medical records, the observations of treating physicians and others, and the claimant's description of her limitations. *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005). Where, as here, an ALJ fails to consider the entirety of

the record in determining the severity of a claimant's impairments and fails to properly evaluate a claimant's subjective complaints, the resulting RFC assessment is called into question because it does not include all of the claimant's limitations. *See Holmstrom v. Massanari*, 270 F.3d 715, 722 (8th Cir. 2001). This is especially true here where the ALJ failed to properly consider evidence of plaintiff's mental impairment. *See Pate-Fires v. Astrue*, 564 F.3d 935, 944-45 (8th Cir. 2009) (ALJ's failure to evaluate evidence of mental impairment resulted in RFC not supported by substantial evidence); *cf. Delrosa v. Sullivan*, 922 F.2d 480, 485-86 (8th Cir. 1991) (failure to properly consider mental impairment may have resulted in credibility analysis that failed to examine possibility that impairment aggravated claimant's sense of pain).

## VII. Conclusion

A review of the record shows that the ALJ failed to consider and properly evaluate all of the relevant evidence in making his determination that plaintiff was not under a disability at any time through the date of the decision. As such, the Commissioner's decision is not supported by substantial evidence on the record as a whole and the matter must be remanded for further consideration. Upon remand, the Commissioner shall permit the parties to supplement the record with any additional evidence and information that may assist in the determination of plaintiff's claim and order consultative examinations if necessary to fully develop

the record. Although the undersigned is aware that upon remand, the ALJ's decision as to non-disability may not change after properly considering all evidence of record and undergoing the required analysis, *see Pfitzer v. Apfel*, 169 F.3d 566, 569 (8th Cir. 1999), the determination is nevertheless one that the Commissioner must make in the first instance.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** to the Commissioner for further proceedings.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

Dated this 30th day of January, 2014.

    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE